UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:10-cv-80792

LOUISE ROTONDO and
ERIC DUTTON,

       Plaintiffs,

v.

OCEAN CLUB JUPITER
CONDOMINIUM ASSOCIATION,
INC., a Florida Corporation

       Defendant.
_____/

## MOTION TO DISMISS COMPLAINT OR, IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT

COMES NOW, the DEFENDANT, OCEAN CLUB JUPITER CONDOMINIUM ASSOCIATION, INC., a Florida Corporation (hereinafter "the Association" or "Defendant"), through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 12(b) or, alternatively, Rule 12(e), respectfully moves this Honorable Court to dismiss the Complaint filed by the Plaintiffs, LOUISE ROTONDO ("Rotondo") and Eric Dutton ("Dutton") (hereinafter, collectively referred to as "Plaintiffs"), or, in the alternative, require Plaintiffs to provide a more definite statement thereof, and as grounds therefore, the Defendant would state as follows:

    1.     This action arises under the Fair Labor Standards Act, 29 U.S.C. § 207, Chapter 448, Florida Statutes, and Florida common law.

    2.     The Defendant is a condominium association, which maintains a single condominium building located at 2000 S Highway A1A in Jupiter, Palm Beach County, Florida. The Association is responsible for maintaining the premises, approving a budget, collecting

assessments, and governing resident compliance with the condominium's declarations and by-laws. The Association is incorporated in Florida as a not-for-profit entity.

3.     Plaintiffs, both of whom were formerly employed by the Association on a part-time basis (Rotondo as a Property Manager, Dutton as a Maintenance Person), filed a five (5) count Complaint on or about May 27, 2010 in the Fifteenth Judicial Circuit in and for Palm Beach County Florida, seeking alleged unpaid wages owed to each.

4.     The Complaint was served on Defendant on June 21, 2010.

5.     On July 7, 2010, Defendant timely removed the action to Federal Court.[1]

6.     Counts I (brought by Rotondo) and IV (brought by Dutton) seek unpaid wages purportedly based on Florida common law.  Although each Plaintiff alleges that they were not paid for several hours at the agreed upon wage, neither Plaintiff sets forth or incorporates any allegations as to the nature and basis of the compensation owed.  As a result, the allegations in support of Counts I and IV do not state a claim upon which relief can be granted and should be dismissed pursuant to Rule 12(b)(6).  In the alternative, and because the allegations are so incomplete, Plaintiffs should be required to provide a more definite statement.

7.     Counts II (brought by Rotondo) and V (brought by Dutton) are purportedly based on a breach of contract.  However, neither Plaintiff attached a copy of any written contract to the complaint.  Both further fail to allege any of the essential elements of an oral contract, including the date and terms of such a contract, the identity of the parties to the contract, or the terms or obligations created by the contract.  Without setting forth the elements of a claim for breach of contract, dismissal of Counts II and V are therefore appropriate, especially since, on its face, the Complaint suggests that there is no factual basis for the claims thereunder.  Alternatively,

---

[1] Plaintiffs have since filed a Motion for Remand, which is entirely inappropriate.  Defendant will separately be filing its response to same.

**COLE, SCOTT & KISSANE, P.A.**
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

Plaintiffs should be required to provide a more definite statement regarding their breach of contract claims pursuant to Rule 12(e).

8.      In Count III of the Complaint, Dutton brings a claim under the Fair Labor Standards Act for the failure to pay overtime since on or about January 1999. Aside from the statute of limitations concerns, Dutton cannot establish jurisdiction, as neither he himself, nor the Ocean Club of Jupiter Condominium Association was ever involved in commerce or the production of goods for commerce. As such, Count III should be dismissed. In the alternative, Plaintiffs should be required to provide a more definite statement regarding the requisite individual or enterprise coverage under the FLSA.

9.      This Motion is more fully supported by the following Memorandum of Law.

10.     For all of the foregoing reasons, Defendant, respectfully requests that the Court enter an order: (1) dismissing the Complaint; or (2) requiring Plaintiff to provide a more definite statement thereto; and (3) granting such other, further relief as the Court deems appropriate.

## MEMORANDUM OF LAW

**A.      Plaintiffs' Claim for "Unpaid Wages" Fails to State a Cause of Action or, Alternatively, is So Vague or Ambiguous that Defendant Cannot Reasonably Be Required to Frame A Responsive Pleading**

Counts I (brought by Rotondo) and IV (brought by Dutton) seek unpaid wages. In support thereof, the Plaintiffs alleges only that they were not paid "the agreed upon wage" for several hours which they purportedly worked. *See*, Compl. ¶ 9, 23. Plaintiffs' allegations that they are owed unpaid wages, however, is not supported by any documentary evidence relative to the alleged "agreed upon wage", and fails to allege the nature of or basis for seeking the "wages" owed. Such a conclusory allegation of entitlement to damages fails to state a claim upon which relief can be granted, and dismissal pursuant to Rule 12(b)(6) is appropriate. *Int'l Brokerage &*

*Surplus Lines, Inc. v. Liberty Mut. Ins.*, 2007 WL 220172 (M.D.Fla. 2007) (requiring "to survive a motion to dismiss, a plaintiff must do more than merely 'label' his claims").

Notably absent from Counts I and IV of the Complaint are any allegations supported by ultimate facts showing Plaintiffs are owed unpaid wages from Defendant. Rather, Plaintiffs simply "label" their claims, and claim they were both damaged as a result of Defendant's failure to pay them the agreed upon wages to which they were entitled, and seek attorneys fees pursuant to Florida Statute § 448.08. *See*, Compl. ¶ 11, 25. Neither of the Plaintiffs make any allegation of ultimate fact as to the approximate time period that the alleged violations were made, why they are entitled to wages, or how many hours they worked versus how much they were paid. Entitlement to unpaid wages or back wages supported by ultimate facts is a critical element for a cause of action under Florida Statute § 448.08. *Souder v. Premier Automotive on Atlantic, LLC*, 2009 WL 691916 (M.D.Fla. 2009). Not only do Plaintiffs fail to state a cause of action against Defendant for relief under Florida Statute § 448.08, but they do not satisfy the minimal pleading requirements of Federal Rule of Civil Procedure 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds of his 'entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964-65 (2007). Taking the facts as true, a court may grant a motion to dismiss when, "on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action." *Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.,* 992 F.2d 1171, 1174 (11th Cir. 1993). In this regard, it is important to note that courts of the State of Florida define "salary" as importing a specific contract for a specific sum for a specified period of time, while "wages" are compensation for

services by the day or week. *Broward Builders Exchange, Inc. v. Goehring,* 231 So.2d 513, 514 (Fla. 1970). However, the Plaintiffs have both failed to allege any "wages" (as opposed to "salary") subject to Fla. Stat. § 448.08 and, accordingly, do not set forth ultimate facts as to a necessary element of the cause of action.

Additionally defective, both Counts I and IV of the Complaint fail to include allegations of the approximate time period during which the common law violations are alleged to have taken place or the amount that is claimed to be owed in unpaid wages. Plaintiffs' do not even provide the operative dates of their employment with Defendant, which is significant because of the limitations period. *See,* § 95.11(c), Fla. Stat. (providing two years to bring "[a]n action to recover wages or overtime or damages or penalties concerning payment of wages and overtime"). Plaintiffs also fail to identify any legal basis for Defendant's liability for the damages alleged. In particular, a canvassing of the cases where Florida Statute § 448.08 arises demonstrates that the Plaintiffs in those cases have not brought a cause of action pursuant to section 448.08 like the Plaintiffs here are trying to do. *See,* Compl. ¶ 2 (bringing action under, inter alia, Chapter 448). Rather, they bring independent causes of action for wages; for example, pursuant to a contact or employment agreement. *See e.g., Ocean Club Community Ass'n, Inc. v. Curtis,* 935 So.2d 513 (Fla. 3d DCA 2006) (claiming breach of employment contract); *Davis v. Nat'l Med. Enters., Inc.,* 253 F.2d 1314 (11th Cir. 2001) (claiming breach of employment contract); *Speer v. Mason,* 769 So.2d 1102 (Fla. 4th DCA 2000) (involving compensation agreement); *Gulf Solar, Inc. v. Westfall,* 447 So.2d 363 (Fla. 2d DCA 1984) (claiming breach of oral contract); *Coleman v. City of Hialeah,* 525 So.2d 425 (Fla. 3d DCA 1988) (bringing declaratory decree action). Therefore, Plaintiffs' asserted action for unpaid wages, filed pursuant to Florida Statute § 448.08 is not a cause of action and that claim should be dismissed.

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

In the alternative, the allegations set forth in Plaintiffs' "unpaid wages" claims are too vague and attenuated to provide Defendant with adequate notice of the predicate facts. Because the allegations in Counts I and IV are not sufficient even to identify the legal theory under which each of the Plaintiffs bring their claim, Defendant is unable to assess issues critical to mounting an effective defense, including those relating to statute of limitations, pre-emption, and jurisdiction. As a result of such insufficiency, Defendant is completely frustrated in its ability to admit or deny the Plaintiffs' allegations or to formulate affirmative defenses. The allegations are so vague, ambiguous, and incomplete that they fail to identify any cognizable claim for relief against Defendant, and, therefore, Defendant cannot reasonably be required to frame a responsive pleading. Accordingly, pursuant to Federal Rule 12(e), both Plaintiffs should be required, at a minimum, to provide more detail and clarification regarding the precise nature of the legal theory and claims they are intending to pursue in Counts I and IV. *See e.g. Swierkiewicz v. Sorema N.A.,* 534 U.S. 506, 512 (2002) (stating ("[i]f a pleading fails to specify the allegations in a manner that provides sufficient notice, a defendant can move for a more definite statement under Ruler 12(e) before responding").

**B.    Plaintiffs Fails to Plead the Essential Elements for Breach of Contract or Such Allegations are so Vague or Ambiguous that Defendant Cannot be Required to Frame a Responsive Pleading**

Counts II (brought by Rotondo) and V (brought by Dutton) are entitled "breach of contract" and seek damages in the form of "unpaid wages". *See,* Compl. ¶ 14, 28. In particular, and although the Plaintiffs claim they each had a contract for employment with Defendant, *Id* at 13, 17, neither Plaintiff attaches a copy of that contract to the Complaint. Importantly, where a claim is based on a written instrument, the complaint does not state a cause of action until the instrument or an adequate portion thereof is attached to or incorporated in the complaint.

*Contractors Unlimited, Inc. v. Nortrax Equip. Co. Southeast,* 833 So.2d 286, 288 (Fla. 5th DCA

2002); *Walters v. Ocean Gate Phase I Condominium,* 925 So.2d 440, 443 (Fla. 5th DCA 2006)

(finding that "the failure to attach appropriate documents was problematic because "a complaint

based on a written instrument does not state a cause of action until the instrument or an adequate

portion thereof, is attached to or incorporated in the complaint"); *see also generally,* Fla. R. Civ.

P. 1.130(a)[2] (providing that "[a]ll bonds, notes, bills of exchange, contracts, accounts, or

documents upon which action may be brought or defense made, or a copy thereof or a copy of

the portions thereof material to the pleadings, shall he incorporated in or attached to the

pleading"). Because the Plaintiffs have not incorporated or attached the requisite documents,

they have not sufficiently alleged that a valid contract existed. Accordingly, Plaintiffs' claims

for breach of contract must be dismissed.

To the extent that Plaintiffs allege the existence of oral employment contracts (although

not discernable from the pleadings), they likewise fail to allege all of the requisite elements for

same. Florida law requires Plaintiff to "allege facts that, if taken as true, demonstrate that the

parties mutually assented to 'a certain and definite proposition' and left no essential terms open."

*Rubenstein v. Primedica Healthcare, Inc.,* 755 So.2d 746, 748 (Fla. 4th DCA 2000). Plaintiffs'

complaint certainly does not allege facts anywhere near this standard. Moreover, in an action for

breach of an oral contract, the complaint must allege the mutual formation of an oral contract, the

obligations assumed under the contract, consideration and breach. *See e.g., Perry v. Cosgrove,*

464 So.2d 664, 667 (Fla. 2d DCA 1985). In this case, and aside from the mere conclusory

allegation of breach, both Plaintiffs fails to set forth the other elements of an oral contract, and

the allegations contained in the Complaint are otherwise insufficient to put Defendant on notice

---

[2] Although Rule 1.130(a) is a state-law rule, it is appropriate to apply in this Court because this action was removed.
*See, Beach TV Props., Inc. v. Bellsouth Mobility LLC,* 2006 WL 2982874 (N.D.Fla. 2006) (finding it proper for
court to consider Rule 1.130(a) in a case that was removed to federal court).

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

of the basis for Plaintiffs' claims. Specifically, Plaintiffs do not allege sufficient facts to establish Defendant's alleged contractual duties or to establish any breach of the as yet unspecified contractual duties and obligations. Accordingly, Counts II and V should be dismissed for failure to state a claim for which relief can be granted. *Int'l Brokerage.*, 2007 WL 220172 (requiring a plaintiff to "do more than merely 'label' his claims" to survive a motion to dismiss).

Finally, and even assuming that the allegations in the Complaint in support of Counts II and V were sufficient to survive dismissal under the applicable standard, the allegations as set forth in the Complaint are so vague, ambiguous, and incomplete that Defendant cannot reasonably be required to frame a responsive pleading. In fact, the record is devoid of any evidence establishing the term of any agreement (whether written or oral), the amount to be paid, the duties of the employees, the duties of the employer, and several other essential terms necessary to carry the day. Accordingly, at a minimum, Plaintiffs should be required to provide a more definite statement concerning the allegations of its claims for breach of contract. *Id* (explaining request for more definite statement is appropriate where defendant has no sure knowledge of the exact oral contract which is allegedly the basis for plaintiff's cause of action).

Importantly, to survive a Rule 12(e) motion in a contract claim, the claimant must recite the relevant agreement, the basic contents of that agreement, and the pertinent parties. *Moore v. Fidelity Fin. Servs., Inc.,* 869 F.Supp. 557, 560-61 (N.D.Ill. 1994). In a contract dispute, a more definite statement is required when the alleged breaching party can only guess as to what conduct and contract(s) an allegation refers. *555 M. Mfg., Inc. v. Calvin Klein, Inc.,* 13 F.Supp.2d 719, 724 (N.D.Ill. 1998). With Plaintiffs' claims for breach of contract, they have both alleged that their employment agreement was breached, but did not attach any contract, did not state any terms of any contract, did not state when any such contract was made, and did not state the

persons who made the contract.  Given this lack of pleading, Defendant is unable to identify the terms at issue, determine whether such violates the statute of frauds, or speculate whether any such contract was procured by fraud or other inappropriate means, or ascertain whether the statute of limitations would affect the Plaintiffs' ability to maintain their claims, and therefore are unable to form with particularity a pleading that would incorporate such a defense.

**C.      Dutton's Claim for Overtime Under the Fair Labor Standards Act Must be Dismissed Due to a Lack of Subject Matter Jurisdiction**

This Court is without subject matter jurisdiction over the above-captioned case as a result of the fact that neither the Association nor Plaintiff is covered by the FLSA.  The FLSA provides coverage in the following two circumstances: (1) where an employee works for an enterprise engaged in commerce or in the production of goods for commerce ("enterprise coverage"), and (2) where an employee is engaged in commerce or in the production of goods for commerce ("individual coverage").  *Ares v. Manuel Diaz Farms, Inc.*, 318 F. 3d 1054, 1056 (11th Cir. 2003).  Importantly, the employee bears the burden of establishing that he or his employer was engaged in activities falling within the scope of the FLSA's coverage.  *OSI, Inc. v. U.S.*, 285 F.3d 947, 951 (11th Cir. 2002) (holding that "the burden is on the plaintiff to prove that jurisdiction exists").  As demonstrated herein, Dutton is wholly unable to carry his burden of establishing coverage under the FLSA under either of the two above-referenced theories.

**1.      The Association Does Not Meet the Criteria for Enterprise Coverage Under the Fair Labor Standards Act.**

In order for a Defendant to be covered by the FLSA, it must be an "enterprise engaged in commerce or in the production of goods for commerce."  The FLSA specifies than an

[e]nterprise engaged in commerce or in the production of goods for commerce means an enterprise that –
(i) has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

goods or materials that have been moved in or produced for commerce by any person; and
(ii) is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retain level that are separately stated).

29 U.S.C. § 203(s)(1)(A)(ii) (emphasis added). Thus, for a Defendant to be subject to the provisions of the FLSA, a Plaintiff must establish that the business satisfies both elements of the two-prong test. *Safe Hurricane Shutters, Inc.*, 578 F.Supp.2d 1363 (S.D. Fla. 2008).

Firstly, Plaintiffs' responsibilities as a part-time Maintenance Person for the Association was not substantially related to "commerce" or the "production of goods for commerce". To be sure, any supplies and/or equipment necessary for the Plaintiff to perform his job were already outside the stream of commerce by the time the Dutton used them. *Polycarpe v. E&S Landscaping Serv. Inc.,* 572 F.Supp.2d 1318, 1321 (S.D.Fla. 2008) (holding that supplies, equipment, and materials used by the plaintiffs were purchased from local retailers and wholesalers "had come to rest, *i.e.*, any journey of an interstate nature had ended--and were then utilized to transact the landscaping business, which was entirely local in nature"). As with all Association employees, Dutton carries out his duties solely on the condominium premises and within Palm Beach County, Florida. *See*, Bregande Decl (Attached as **Exhibit "A"**). For this reason alone, Dutton is simply not substantially involved in commerce or the production of goods for commerce, and, he therefore cannot establish the first element for enterprise coverage.

Furthermore, even if this Court determines that the Association as a whole is engaged in commerce, the Association is not the type of business to which enterprise coverage applies. The United States Department of Labor, in a published Opinion Letter dated September 29, 2008, has provided some guidance regarding this precise issue:

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

> *Enterprise Coverage*, as defined in section 3(s)[3] [of the FLSA], applies only to activities performed for a business purpose. It typically does not extend to the eleemosynary, religious, educational, <u>or similar activities of organizations operated on a nonprofit basis where such activities are not in substantial competition with other businesses.</u>

*See*, September 29, 2008 Opinion Letter (Attached as **Exhibit "B"**) (emphasis supplied).  It can hardly be disputed that the Defendant is a non-profit legal entity and is not in the business of competing against other condominium associations in the area, nor does the Association turn an annual profit.  Accordingly, this Court should find enterprise coverage inapplicable because the Defendant does not have any employees (much less more than two) engaged in commerce or the production of goods for commerce.  In the alternative, the Association respectfully requests that this Court follow the DOL's guidance and hold that enterprise coverage does not extend here because Defendant is not in "substantial competition with other businesses."

Secondly, Dutton cannot establish enterprise coverage because the Association does not have $500,000.00 is annual gross sales volume.  Pursuant to 29 C.F.R. §779.259, which was promulgated by the DOL and is entitled "What is included in annual gross volume":

> The gross volume of sales or business includes the receipts from sales made or business done by the retail or service establishments of the enterprise as well as the sales made or business done by any other establishments of the enterprise, <u>exclusive of the internal transactions between them</u>.  Gross volume is measured by the price paid by the purchaser for the property or service sold to him, as stated in the Senate Committee Report (§ 779.258).  It is not measured by profit on goods sold or commissions on sales made for others.

*Id* (emphasis supplied).  Significantly, the above-referenced regulation and case law makes clear that if a business does not gross $500,000.00, it is not covered by the FLSA, and a Plaintiff is precluded from bringing a FLSA claim on a theory of enterprise liability.  Applying this rule, the

---

[3] While cited as "3(s)", the Department of Labor was citing 29 U.S.C. § 203(s).  Notably, in its opinion letters, the DOL commonly references statutes numbered § 201 through 219 as "1" through "19".

**COLE, SCOTT & KISSANE, P.A.**
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

court in *Johnson v. Transmission Serv., Inc.* affirmed the dismissal of a case because the plaintiff offered no proof of amount of sales or income to the business such as is required to demonstrate that the corporation was subject to enterprise liability. 16 Fed.Appx. 638 (9th Cir. 2001).

Here, the Complaint makes no mention of the $500,000.00 gross income requirement. This is presumably because Dutton acknowledges that the Association's gross annual revenue never exceeded $500,000.00. *See,* http://www.manta.com/c/mmb60j3/ocean-club-jupiter-condominium (reporting an annual revenue of "less than $500,000.00"); *see also,* Bregande Decl (Attached as **Exhibit "A"**). This is especially true since receipt of unit owners' monthly maintenance fees is the sort of internal transaction that should not be considered in calculating annual gross volume for purposes of an enterprise analysis. *See,* 29 C.F.R. §779.259. Indeed, internal money transferred is not revenue received "from sales made or business done." Rather, the owner-paid maintenance fees are simply internal transfers of money to support the Association's operation for the benefits of all unit-owners. As such, and without alleging that the Association has conducted an sort of business, Dutton is unable to prove that Defendant's annual income is anywhere near the $500,000.00 required by 29 U.S.C. § 203(s)(A)(ii) and Count III should therefore be dismissed.

### 2.   Plaintiff Does Not Meet the Criteria for Individual Coverage under the Fair Labor Standards Act.

As discussed above, for a plaintiff to be covered by the FLSA, he or she must be either engaged in interstate commerce, or engaged in the production of goods for interstate commerce.[4] *See,* 29 U.S.C. § 207. In other words, to successfully establish individual coverage, Dutton must

---

[4] The term "commerce" means "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof. " 29 U.S.C. §203(b).

**COLE, SCOTT & KISSANE, P.A.**
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

show, irrespective of his employers' business activities, that a substantial part of his job included "the actual movement of persons or things in *interstate* commerce." *Thorne v. All Restoration Servs., Inc.,* 448 F.3d 1264, 1267 (11th Cir. 2006). Notably, the burden of proof to establish the engagement in such activity falls solely and squarely on the employee. *D.A. Schulte, Inc. v. Gangi,* 328 U.S. 108, 121 (1946). To determine whether an employee was engaged in interstate commerce, a court must focus its inquiry on the activities of the employee as opposed to the business of the employer. *Mitchell v. Lublin McGaughy & Assocs.,* 358 U.S. 207, 211 (1959).

By examining the legislative history and the express language of the FLSA, the Supreme Court has determined and articulated that it is the intent of Congress to regulate only activities constituting commerce and to protect only those individuals *engaged* in commerce, instead of activities and individuals merely *affecting* commerce. *Thorne,* 448 F.3d 1264 (citing *McLeod v. Threlkeld,* 319 U.S. 491, 497). "Therefore, for an employee to be 'engaged in commerce' under the FLSA, he must be directly participating in the actual movement of persons or things in interstate commerce[5] by (i) working for an instrumentality of interstate commerce, e.g., transportation or communication industry employees, or (ii) by regularly using the instrumentalities of interstate commerce in his work, e.g., regular and recurrent use of interstate telephone, telegraph, mails, or travel." *Id* at 1266 (citing 29 C.F.R. § 776.23(d)(2). It has also been held that an employee is engaged in the actual movement of persons or things in interstate commerce for the purposes of the FLSA if (1) his activities are so "directly and vitally related to the functioning of an instrumentality or facility of interstate commerce as to be, in practical effect, a part of it, rather than isolated local activity;" and (2) "a substantial part of the

---

[5] This Court adopted such standard in evaluating the existence of enterprise coverage in *Obregon v. JEP Family Enterprises, Inc.,* 2010 WL 1816183 at *2 (S.D. Fla. 2010).

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

employee's work is related to interstate commerce." *Casanova v. Morales*, 2007 WL 4874773 (S.D. Fla. 2007) (internal citations omitted).

It is clear that Dutton was not engaged in the production of goods at all, let alone for interstate commerce. To be sure, the Complaint does not even make any allegations in such regard. Rather, Dutton makes the unsupported, conclusory statement that he was an employee "as defined by 29 U.S.C. § 203(e)", *see*, Compl. ¶ 5, without alleging the tasks performed, how often he performed them, or how any such mystery tasks constitute the engagement in commerce. As such, Count III is entirely insufficient. *Twombly,* 550 U.S. at 555 (requiring more than label and conclusions, and a formulaic recitation of the elements of a cause of action will not do); *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Development Corp. S.A.*, 711 F. 2d 989, 995 (11th Cir. 1983) (finding that in evaluating a Complaint for sufficiency, a court must not assume that the plaintiff can prove facts not alleged or that the defendant violated relevant laws in ways not alleged).

It is anticipated that Dutton will concede he worked, not in the transportation or communication industry, but as a Maintenance Person working solely on premises in Jupiter, Florida, where he did not travel to or correspond with merchants outside of the state of Florida using the mail, phone, or fax, or made purchases of goods from out-of-state vendors.[6] *See*, Bregande Decl (Attached as **Exhibit "A"**). To the extent that Dutton attempts to allege that he engaged in commerce because he used, handled, and/or purchased goods that traveled in interstate commerce in connection with his maintenance work for the Association, such is insufficient to result with individual coverage under the FLSA. *See e.g., Junkin v. Emerald Lawn Maintenance & Landscaping, Inc.*, 2005 WL 2862079, *1 (M.D. Fla. 2005) (holding that there

---

[6] As can be logically deduced from his position as a maintenance person in a condominium association, Dutton was responsible for maintaining the pool and making necessary repairs throughout the building. *Id.*

was no individual coverage because "[t]he Court is not persuaded that the mere act of transporting goods that previously found themselves in the flow of interstate commerce means that an employee 'engaged in commerce' and is thus subject to 'individual coverage' under the FLSA"). Similar to Dutton, the plaintiff in *Junkin* "performed lawn maintenance services, and worked as a foreman and supervisor of a lawn maintenance crew" and all of his work was performed within Brevard County, Florida. *Id.*

The *Junkin* court cited the case of *Joles v. Johnson Cty. Youth Serv. Bureau, Inc.,* 885 F.Supp. 1169, 1178-79 (S.D.Ind. 1995), wherein the court disposed of individual coverage and noted "where [the] plaintiff did not participate in movement of interstate commerce, or in any activity essential or directly related thereto, she was not 'engaged in commerce,' and [the] fact that goods she obtained as part of her duties had previously traveled in interstate commerce was irrelevant." *Id.* The plaintiff in *Joles* was a house parent for a group home who commonly purchased a variety of goods and items from the local Wal-Mart and other stores. *Id* at 1173.

The *Junkin* court also relied on the case of *Rivera v. Heights Landscaping, Inc.,* 2004 WL 434214 (N.D.Ill. 2004), which found a "plaintiff could not establish individual coverage, based on a 'production of goods for commerce' rationale, 'merely by showing that in the course of his work [as a landscaper] he used rakes, fertilizers, or other goods that originated out of state'". *Id.* The *Junkin* court went on to state that "[b]rought to its logical end, such a theory would mean that an employee who, in the course of his duties, simply moves an item (which originated in another state) from one place to another within the same property, or even within the same room within a building, has 'engaged in commerce' by 'transporting' that item. Such a theory cannot stand, as it would, in essence, nullify the 'interstate' requirement and ultimately render the *Commerce Clause* meaningless." *Id.*

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

As is illustrated by there cases, courts distinguish between merchants who bring commerce across state lines for sale, and the ultimate consumer, who merely purchases goods that previously moved in interstate commerce for intrastate use. *Thorne,* 448 F.2d at 1266, 1267 (11th Cir. 2006).[7] "When goods reach the customer for whom they were intended, the interstate journey ends and employees engaged in any further *intra*state movement of the goods are not covered under the Act." *Id.* In further illustration of such key distinction, handlers of goods for a wholesaler who moves them interstate on order to meet the needs of specified customers are in commerce, while those employees who handle goods after acquisition by a merchant for general local disposition are not. *McLeod v. Threlkeld,* 319 U.S. 491, 493 (1943); *Navarro v. Broney Automotive Repairs, Inc.,* 533 F. Supp. 2d 1223 (S.D.Fla. 2008) (holding plaintiff's collection and transportation of motor parts that had traveled in interstate commerce from local auto parts stores for installation of the parts into vehicles of the defendant's local customers was purely intrastate activity not covered under the Act); *Guzman v. Irmadan, Inc.,* 551 F. Supp. 2d 1368 (S.D.Fla. 2008) (granting summary judgment on issue when plaintiff was remodeling residences for employer, even though plaintiff picked up and purchased at retail stores various items).

It is clear from the above discussion and the facts of this case that, in working as a Maintenance Person for the Association, Dutton's duties and responsibilities were entirely internal in nature and he was never substantially involved the movement of goods or persons in interstate commerce. *See,* Bregande Decl (Attached as **Exhibit "A"**). Dutton's duties are clearly analogous to those of the plaintiffs in *Junkin, Joles,* and *Rivera.* Accordingly, the Association requests this Court follow the reasoning in the cases noted above and hold that Plaintiff's internal duties of a maintenance person are insufficient to meet the requirements for individual coverage.

---

[7] In *Obregon,* this Court held that coverage does not exist where out-of-state goods are purchased from a local store for local use.

**COLE, SCOTT & KISSANE, P.A.**
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

CASE NO. 9:10-cv-80792

D.   **Dutton's Claim for Overtime Compensation Under the Fair Labor Standards Act is Barred by the Statute of Limitations**

Although the statute of limitations is normally an affirmative defense to be raised by the answer, "where the complaint affirmatively and clearly shows the conclusive applicability" of the defense to bar the action, this defense may be pleaded in a motion to dismiss. *Reisman v. Gen'l Motors Corp.,* 845 F.2d 289 (11th Cir. 1988); *Kelly v. Eckerd Corp.*, 2004 WL 614822 (E.D. Pa. 2004) (finding defendant properly pled statute of limitations defense in a motion to dismiss FLSA complaint for overtime wages).

Here, and on the face of the Complaint, Count III is barred by the statute of limitations. Indeed, Dutton is seeking overtime payments from "January 1999 to February 2010." *See,* Compl. ¶ 17. However, actions under the Fair Labor Standards Act are "forever barred" unless "commenced within *two years after the cause of action accrued.*" *Knight v. Columbus,* 19 F.3d 579 (11thCir. 1994) (citing 29 U.S.C. § 255(a)) (emphasis added).   In the case of willful violations, the limitations period is extended to three years. *Id.* "There can be no excuse for filing claims that are statutorily barred..." *Galasso v. Eisman, Zucker, Klein & Ruttenberg,* 310 F.Supp.2d 569 (S.D.N.Y. 2004); *Reisman,* 845 F.2d 289.

Specifically, Dutton's Complaint, on its face, alleges that "[s]ince on or about January 1999 to February 2010, defendant OCEAN CLUB has willfully violated the provisions of § 7 of the Act [29 U.S.C. §207] by employing employees engaged in commerce for workweeks longer than 40 hours without compensating them for their employment in excess of 40 hours at rates not less than one and one-half times the regular rates at which they were employed: specifically ERIC DUTTON, since January 1999 to February 2010, has worked in excess of 40 hours a week during several weeks of his employment, and was not compensated for the work in excess of 40

COLE, SCOTT & KISSANE, P.A.
1645 PALM BEACH LAKES BOULEVARD - 2ND FLOOR  - WEST PALM BEACH, FLORIDA 33401 (561) 383-9200 - (561) 683-8977 FAX

CASE NO. 9:10-cv-80792

hours at a rate not less than one and one-half times the regular rate at which he was employed."

*See*, Compl. ¶ 17.  Plaintiff's claims are clearly time-barred and, therefore, must be dismissed.

WHEREFORE, Defendant respectfully request this Court enter an order (1) dismissing the Complaint; or (2) requiring Plaintiff to provide a more definite statement thereto; and (3) granting such other, further relief as the Court deems appropriate.

### CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via CM/ECF Notification this 26th day of July 2010 to: Robert S. Norell, Esq., Robert S. Norell, P.A., 7350 N.W. 5th Street, Plantation, FL 33317.

COLE, SCOTT & KISSANE, P.A.
Attorneys for Defendant
1645 Palm Beach Lakes Blvd., 2nd Floor
West Palm Beach, Florida 33401
E-Mail: barry.postman@csklegal.com
Telephone: (561) 383-9234
Facsimile: (561) 683-8977

By: _____
BARRY A. POSTMAN
FBN: 991856
RACHEL K. BEIGE
FBN: 0016366

L:\1918-0919-00\P\MTD.doc

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:10-cv-80792

LOUISE ROTONDO and
ERIC DUTTON,

      Plaintiffs,

v.

OCEAN CLUB JUPITER
CONDOMINIUM ASSOCIATION,
INC., a Florida Corporation

      Defendant.

_____/

# EXHIBIT 'A'

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:10-cv-80792

LOUISE ROTONDO and
ERIC DUTTON,

      Plaintiffs,

v.

OCEAN CLUB JUPITER
CONDOMINIUM ASSOCIATION,
INC., a Florida Corporation

      Defendant.

_____/

## DECLARATION OF STEPHEN BREGANDE

1.    I am a resident of the Ocean Club Jupiter Condominium, Inc. and Board member of the Ocean Club Jupiter Condominium Association, Inc., a Florida Corporation, the Defendant in the above-captioned case.

2.    The Ocean Club Jupiter Condominium Association, Inc. is a condominium association maintaining a single condominium building located at 2000 S Highway A1A in Jupiter, Palm Beach County, Florida.

3.    The Ocean Club Jupiter Condominium Association, Inc. was created as a not-for-profit entity. Generally, the Ocean Club Jupiter Condominium Association, Inc. is responsible for maintaining the premises, approving a budget, collecting assessments, and governing resident compliance with the condominium's declarations and covenants. The Ocean Club Jupiter Condominium, Inc. files is annual report with the Florida Division of Corporations as a Not for-Profit Limited Liability Company.

4.    The Ocean Club Jupiter Condominium Association, Inc. was neither created for the benefit of, nor serves, the general public. To the contrary, the Ocean Club Jupiter Condominium Association, Inc was created for the exclusive benefit of, and serves only residents therein.

5.    To assist in its maintenance responsibilities, The Ocean Club Jupiter Condominium Association, Inc, has a small number of employees who carry out very specific tasks. These employees include a general building maintenance person. All employees of the Ocean Club Jupiter Condominium Association, Inc. conduct their duties and responsibilities within Palm Beach County, Florida only. No employee of the Ocean Club Jupiter Condominium Association, Inc. is involved in commerce or the production of goods for commerce.

6. The Plaintiff, Eric Dutton, was formerly employed by the Ocean Club Jupiter Condominium Association, Inc. as a Maintenance Person. During his employment as a maintenance person, the Plaintiff was responsible for maintaining around the pool and making necessary repairs throughout the building. His duties were completed entirely on condominium premises. The Plaintiff was not involved in the movement of goods or persons in interstate commerce. The Plaintiff performed his entire job while on the condominium premises and was not required to travel interstate for any reasons whatsoever.

7. Moreover, the items that Plaintiff purchased and utilized in maintaining the Association premises came from local stores and were intended for local use. The Plaintiff did not order or purchase goods for the Ocean Club Jupiter Condominium Association, Inc. from another state. The Plaintiff did not engage in the production of any goods for commerce, did not directly participate in the actual movement of persons or things through interstate commerce, and did not use the instrumentalities of interstate commerce, such as interstate telephone, facsimile, mail or travel, as all of the tasks performed by Plaintiff were in the Palm Beach County, Florida area.

8. The Ocean Club Jupiter Condominium Association, Inc. has never been involved in commerce or the production of goods for commerce. The only income received by the Ocean Club Jupiter Condominium Association, Inc. comes from owner-paid association maintenance fees, late fees on maintenance fees, application fees for new owners, special assessments, and interest on reserves. There were no other business deals that the association was involved in during 2007-2010.

9. The total gross income for the Ocean Club Jupiter Condominium Association, Inc. during any year in which Plaintiff worked for Ocean Club Jupiter Condominium Association, Inc. has not reached $500,000.00. By way of example, for the calendar year 2009, the Ocean Club Jupiter Condominium Association, Inc. internally collected, or attempted to collect, $316,486 in owner-paid maintenance fees. The remainder of the Ocean Club Jupiter Condominium Association, Inc.'s 2009 income came from the sources mentioned in ¶ 8 and totaled less that $500,000.00.

8. The Ocean Club Jupiter Condominium Association, Inc. reported $461,172 in total income, including the aforementioned unit-owner generated assessments.

9. The Association has not been involved in any other income-generating "business" during its existence.

_Stephen M. Bregande_

Name Printed

7/26/10

Form **1120-H**
Department of the Treasury
Internal Revenue Service

# U.S. Income Tax Return
## for Homeowners Associations
EXTENSION GRANTED TO 09/15/10

OMB No. 1545-0127

**2009**

For calendar year 2009 or tax year beginning _____ , and ending _____

Use IRS label. Otherwise, print or type.

Name
OCEAN CLUB JUPITER CONDO ASSOCIATION

Number, street, and room or suite no. If a P.O. box, see instructions.
2000 S A1A

City or town, state, and ZIP code
JUPITER , FL  33477-1440

Employer identification number
65-0394257

Date association formed
06/07/1992

Check if: (1) ☐ Final return   (2) ☐ Name change   (3) ☐ Address change   (4) ☐ Amended return

A  Check type of homeowners association:  [X] Condominium management association   ☐ Residential real estate association   ☐ Timeshare association

| | | |
|---|---|---|
| B | Total exempt function income. Must meet 60% gross income test | 461,172. |
| C | Total expenditures made for purposes described in 90% expenditure test | 508,785. |
| D | Association's total expenditures for the tax year | 521,915. |
| E | Tax-exempt interest received or accrued during the tax year | 0. |

### Gross Income (excluding exempt function income)

| | | |
|---|---|---|
| 1 | Dividends | |
| 2 | Taxable interest | 13,204. |
| 3 | Gross rents | |
| 4 | Gross royalties | |
| 5 | Capital gain net income (attach Schedule D (Form 1120)) | |
| 6 | Net gain or (loss) from Form 4797, Part II, line 17 (attach Form 4797) | |
| 7 | Other income (excluding exempt function income) (attach schedule) | |
| 8 | Gross income (excluding exempt function income). Add lines 1 through 7 | 13,204. |

### Deductions (directly connected to the production of gross income, excluding exempt function income)

| | | |
|---|---|---|
| 9 | Salaries and wages | |
| 10 | Repairs and maintenance | |
| 11 | Rents | |
| 12 | Taxes and licenses | |
| 13 | Interest | |
| 14 | Depreciation (attach Form 4562) | |
| 15 | Other deductions (attach schedule)  SEE STATEMENT 1 | 13,130. |
| 16 | Total deductions. Add lines 9 through 15 | 13,130. |
| 17 | Taxable income before specific deduction of $100. Subtract line 16 from line 8 | 74. |
| 18 | Specific deduction of $100 | $100 .00 |

### Tax and Payments

| | | |
|---|---|---|
| 19 | Taxable income. Subtract line 18 from line 17 | <26.> |
| 20 | Enter 30% of line 19. (Timeshare associations, enter 32% of line 19.) | 0. |
| 21 | Tax credits | |
| 22 | Total tax. Subtract line 21 from line 20. See instructions for recapture of certain credits | 0. |
| 23 a | 2008 overpayment credited to 2009 | 23a | | |
| b | 2009 estimated tax payments | 23b | | |
| c Total ▶ | 23c | 0. |
| d | Tax deposited with Form 7004 | 23d | |
| e | Credit for tax paid on undistributed capital gains (attach Form 2439) | 23e | |
| f | Credit for federal tax paid on fuels (attach Form 4136) | 23f | |
| g | Add lines 23c through 23f | 23g | 0. |
| 24 | Amount owed. Subtract line 23g from line 22 (see instructions) | 24 | |
| 25 | Overpayment. Subtract line 22 from line 23g | 25 | |
| 26 | Enter amount on line 25 you want: Credited to 2010 estimated tax ▶ _____ Refunded ▶ | 26 | |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than taxpayer) is based on all information of which preparer has any knowledge.

Signature of officer _____   Date 6/9/10   Title Treasurer

May the IRS discuss this return with the preparer shown below (see instr.)? [X] Yes ☐ No

**Paid Preparer's Use Only**

Preparer's signature _____ CPA PA   Date 4/27/10   Check if self-employed ☐

Preparer's SSN or PTIN  P00639513

Firm's name (or yours if self-employed), address, and ZIP code
HACKER & ROMANO
3300 N 29TH AVE, STE 102
HOLLYWOOD,  FL  33020

EIN  65-0881956
Phone no. 954-922-2207

910591
01-06-09   JWA For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.

Form **1120-H** (2009)

OCEAN CLUB JUPITER CONDO ASSOCIATION                          65-0394257

| FORM 1120-H | OTHER DEDUCTIONS | STATEMENT 1 |
|---|---|---|

| DESCRIPTION | AMOUNT |
|---|---|
| ALLOCATED INSURANCE EXPENSE | 3,000. |
| ALLOCATED MANAGEMENT/ADMIN | 9,330. |
| ALLOCATED PROFESSIONAL FEES | 800. |
| TOTAL TO FORM 1120-H, LINE 15 | 13,130. |

| Form **7004** | **Application for Automatic Extension of Time To File Certain Business Income Tax, Information, and Other Returns** | |
|---|---|---|
| (Rev. December 2008)<br>Department of the Treasury<br>Internal Revenue Service | ▶ File a separate application for each return.<br>▶ See separate instructions. | OMB No. 1545-0233 |

| Type or Print | Name<br>OCEAN CLUB JUPITER CONDO ASSOCIATION | Identifying number<br>65-0394257 |
|---|---|---|
| File by the due date for the return for which an extension is requested. See instructions. | Number, street, and room or suite no. (If P.O. box, see instructions.)<br>2000 S AIA | |
| | City, town, state, and ZIP code (if a foreign address, enter city, province or state, and country (follow the country's practice for entering postal code)).<br>JUPITER , FL 33477-1440 | |

Note. See instructions before completing this form.

**Part I**   Automatic 5-Month Extension Complete if Filing Form 1065, 1041, or 8804

**1a** Enter the form code for the return that this application is for (see below) ..........

| Application Is For: | Form Code | Application Is For: | Form Code |
|---|---|---|---|
| Form 1065 | 09 | Form 1041 (estate) | 04 |
| Form 8804 | 31 | Form 1041 (trust) | 05 |

**Part II**   Automatic 6-Month Extension Complete if Filing Other Forms

**b** Enter the form code for the return that this application is for (see below) .......... | **17**

| Application Is For: | Form Code | Application Is For: | Form Code |
|---|---|---|---|
| Form 706-GS(D) | 01 | Form 1120-PC | 21 |
| Form 706-GS(T) | 02 | Form 1120-POL | 22 |
| Form 1041-N | 06 | Form 1120-REIT | 23 |
| Form 1041-QFT | 07 | Form 1120-RIC | 24 |
| Form 1042 | 08 | Form 1120S | 25 |
| Form 1065-B | 10 | Form 1120-SF | 26 |
| Form 1066 | 11 | Form 3520-A | 27 |
| Form 1120 | 12 | Form 8612 | 28 |
| Form 1120-C | 34 | Form 8613 | 29 |
| Form 1120-F | 15 | Form 8725 | 30 |
| Form 1120-FSC | 16 | Form 8831 | 32 |
| Form 1120-H | 17 | Form 8876 | 33 |
| Form 1120-L | 18 | Form 8924 | 35 |
| Form 1120-ND | 19 | Form 8928 | 36 |
| Form 1120-ND (section 4951 taxes) | 20 | | |

**2** If the organization is a foreign corporation that does not have an office or place of business in the United States, check here .......... ▶ ☐

**3** If the organization is a corporation and is the common parent of a group that intends to file a consolidated return, check here .......... ▶ ☐
If checked, attach a schedule, listing the name, address, and Employer Identification Number (EIN) for each member covered by this application.

**Part III**   All Filers Must Complete This Part

**4** If the organization is a corporation or partnership that qualifies under Regulations section 1.6081-5, check here .......... ▶ ☐

**5a** The application is for calendar year  2009 , or tax year beginning _____ , and ending _____

**b** Short tax year. If this tax year is less than 12 months, check the reason:
☐ Initial return   ☐ Final return   ☐ Change in accounting period   ☐ Consolidated return to be filed

| | | | |
|---|---|---|---|
| **6** | Tentative total tax .......... | **6** | – 0 – |
| **7** | Total payments and credits (see instructions) .......... | **7** | |
| **8** | Balance due. Subtract line 7 from line 6. Generally, you must deposit this amount using the Electronic Federal Tax Payment System (EFTPS), a Federal Tax Deposit (FTD) Coupon, or Electronic Funds Withdrawal (EFW) · (see instructions for exceptions) .......... | **8** | – 0 – |

LHA   For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.                  Form **7004** (Rev. 12-2008)
919741
04-24-09

**OCEAN CLUB JUPITER CONDOMINIUM ASSOCIATION, INC.** *forth. F1k*
**PROPOSED BUDGET FOR 2010** *to code accts*
**JANUARY 1, 2010 - DECEMBER 31, 2010**

| | 2009 APPROVED BUDGET | ACTUAL 9/30/2009 | PROJECTED 2009 | PROPOSED 2010 BUDGET |
|---|---|---|---|---|
| **OPERATING INCOME** | | | | |
| 4000 MAINTENANCE FEES | 316,486.00 | 237,364.00 | 316,486.00 | 324,489.00 |
| 4001 CARRYOVER FUNDS 09 | 1,478.00 | 0.0 | 0.0 | 4,467.00 |
| 4095 OTHER INCOME | 100.00 | 244.00 | 244.00 | 100.00 |
| 4200 APPLICATION FEES | 200.00 | 1,100.00 | 1,100.00 | 200.00 |
| 4305 INTEREST INCOME | 1,000.00 | 234.00 | 300.00 | 300.00 |
| 4310 INTEREST ON LATE ACCOUNTS | 200.00 | 410.00 | 410.00 | 200.00 |
| **TOTAL OPERATING INCOME** | 319,464.00 | 239,352.00 | 318,540.00 | 329,756.00 |
| | | | | |
| **OPERATING EXPENSES** | | | | |
| **UTILITY EXPENSES** | | | | |
| 5065 CABLE TV | 14,825.00 | 11,103.00 | 14,825.00 | 15,823.00 |
| 6030 GAS | 22,500.00 | 8,519.00 | 21,500.00 | 22,000.00 |
| 6040 SEWER FEES | 13,000.00 | 10,039.00 | 13,257.00 | 14,000.00 |
| 6700 TELEPHONE | 4,560.00 | 3,966.00 | 4,560.00 | 4,560.00 |
| 6800 ELECTRIC | 36,500.00 | 25,354.00 | 35,500.00 | 36,500.00 |
| 6850 TRASH COLLECTION | 4,200.00 | 3,061.00 | 4,200.00 | 4,500.00 |
| 6900 WATER | 22,500.00 | 17,718.00 | 24,234.00 | 25,446.00 |
| 6901 INTERNET | 200.00 | 150.00 | 200.00 | 276.00 |
| **TOTAL UTILITIES** | 118,285.00 | 79,910.00 | 118,276.00 | 123,105.00 |
| | | | | |
| **MAINTENANCE EXPENSES** | | | | |
| 5075 ELEVATOR MAINTENANCE * | 6,288.00 | 4,545.00 | 6,093.00 | 6,810.00 |
| 5076 ELEVATOR REPAIRS | 2,500.00 | 61.00 | 1,561.00 | 2,500.00 |
| 5110 BUILDING MAINTENANCE | 16,000.00 | 10,685.00 | 16,000.00 | 16,000.00 |
| 5112 MANDATORY FIRE INSP. | 0.0 | 0.0 | 0.0 | 2,000.00 |
| 5125 GROUNDS MAINTENANCE * | 34,500.00 | 28,730.00 | 34,500.00 | 34,500.00 |
| 5240 PEST CONTROL * | 2,500.00 | 2,192.00 | 3,000.00 | 3,500.00 |
| 5910 PAINTING MAINTENANCE | 4,000.00 | 1,874.00 | 3,000.00 | 3,500.00 |
| 6020 POOL MAINTENANCE * | 5,500.00 | 3,825.00 | 5,500.00 | 5,500.00 |
| 6045 RECREATION AREA MAINT. | 2,500.00 | 1,591.00 | 2,000.00 | 2,500.00 |
| 6070 POOL EQUIPMENT MAINT. | 5,500.00 | 5,857.00 | 6,000.00 | 6,500.00 |
| 6245 MAINTENANCE SUPPLIES | 500.00 | 1,420.00 | 2,000.00 | 2,000.00 |
| 6550 SECURITY EQUIPMENT MAINT. * | 2,000.00 | 1,209.00 | 2,000.00 | 2,000.00 |
| 6551 SECURITY SYSTEM REPAIRS | 3,500.00 | 826.00 | 2,000.00 | 3,500.00 |
| 6750 LANDSCAPING/IRRIGATION | 3,500.00 | 825.00 | 2,500.00 | 3,000.00 |
| 6552 GENERATOR/FUEL/REPAIRS | 2,000.00 | 959.00 | 2,000.00 | 2,000.00 |
| 6553 AIR CONDITIONER REPAIRS | 3,500.00 | 302.00 | 500.00 | 3,000.00 |
| **TOTAL MAINTENANCE EXPENSES** | 94,288.00 | 64,501.00 | 88,654.00 | 98,810.00 |
| By Contract * | | | | |
| | | | | |
| **ADMINISTRATIVE EXPENSES** | | | | |
| 5070 CONDO FEES | 200.00 | 200.00 | 200.00 | 200.00 |
| 5260 FEDERAL TAXES | 600.00 | 600.00 | 998.00 | 1,000.00 |
| 5080 FEES & LICENSES | 550.00 | 586.00 | 586.00 | 600.00 |
| 5590 LEGAL & PROFESSIONAL | 1,000.00 | 368.00 | 368.00 | 1,000.00 |
| 5160 ACCOUNTING SERVICES | 4,800.00 | 3,600.00 | 4,800.00 | 4,800.00 |
| 5860 OFFICE SUPPLIES & EXP. | 1,500.00 | 1,651.00 | 2,000.00 | 2,000.00 |
| 6035 POSTAGE | 400.00 | 170.00 | 350.00 | 400.00 |
| 5010 REVIEW & TAX RETURN | 1,600.00 | 1,600.00 | 1,600.00 | 1,600.00 |
| **TOTAL ADMINISTRATIVE** | 10,650.00 | 8,775.00 | 10,902.00 | 11,600.00 |

OCEAN CLUB JUPITER CONDOMINIUM ASSOCIATION, INC.
PROPOSED BUDGET FOR 2010
JANUARY 1, 2010 - DECEMBER 31, 2010

| | 2009 APPROVED BUDGET | ACTUAL 9/30/2009 | PROJECTED 2009 | PROPOSED 2010 BUDGET |
|---|---|---|---|---|
| **PAYROLL EXPENSES** | | | | |
| 5770 SALARY/MAINTENANCE | 42,570.00 | 30,420.00 | 42,570.00 | 42,570.00 |
| 5345 SALARY/CLEANING | 8,400.00 | 5,884.00 | 8,400.00 | 8,400.00 |
| 5165 SALARY/BLDG MANAGER | 24,890.00 | 18,330.00 | 24,890.00 | 24,890.00 |
| 5775 PAYROLL TAXES | 7,600.00 | 4,864.00 | 7,600.00 | 7,600.00 |
| 5403 GROUP INSURANCE | 8,781.00 | 6,586.00 | 8,781.00 | 8,781.00 |
| 5790 WORKERS COMPENSATION | 4,000.00 | 3,511.00 | 4,000.00 | 4,000.00 |
| TOTAL PAYROLL EXPENSE | 96,241.00 | 69,575.00 | 96,241.00 | 96,241.00 |
| | | | | |
| TOTAL OPERATING EXPENSES | 319,464.00 | 222,761.00 | 314,073.00 | 329,756.00 |
| OVER -UNDER | 0.00 | -16,591.00 | -4,467.00 | 0.00 |
| | | | | |
| | | | | |
| **RESERVE ASSESSMENTS** | | | | |
| 9000 ROOFS (flat) | 31,700.00 | 0.0 | 0.0 | 31,700.00 |
| 9001 ROOFS (metal) | 12,550.00 | 0.0 | 0.0 | 12,550.00 |
| 9005 PAINTING | 22,000.00 | 0.0 | 0.0 | 22,000.00 |
| 9010 PAVING | 1,673.00 | 0.0 | 0.0 | 1,673.00 |
| 9015 POOL/REC. | 1,020.00 | 0.0 | 0.0 | 1,020.00 |
| 9020 DEFERRED MAINTENANCE | 12,000.00 | 0.0 | 0.0 | 12,000.00 |
| 9022 CONCRETE RESTORATION | 12,000.00 | 0.0 | 0.0 | 12,000.00 |
| 9025 ELEVATOR | 2,666.00 | 0.0 | 0.0 | 2,666.00 |
| 9030 DECK | 1,250.00 | 0.0 | 0.0 | 1,250.00 |
| 9035 A/C UNITS | 3,429.00 | 0.0 | 0.0 | 3,429.00 |
| 9070 GATES/FENCE PARTS | 2,000.00 | 0.0 | 0.0 | 500.00 |
| TOTAL RESERVE ASSESSMENTS | 102,288.00 | 0.00 | 0.00 | 100,788.00 |

**RESERVE FUNDS**

| 1. Estimated Life: | 3. Replacement Cost |
|---|---|
| Air Conditioner 7 Units - 10 years | A/C 7 Units - $24,000.00 |
| Paint - 7 years | Paint - $150,000.00 |
| Roof (flat) - 20 years | Roof (flat) $634,000.00 |
| Roof (metal) - 20 years | Roof (metal) - $251,000.00 |
| Road Resurfacing - 15 years | Road Resurfacing - $53,000.00 |
| Pool Diamond Brite- 10 years | Pool Diamond Brite - $20,000.00 |
| Deck Resurface - 8 years | Deck Resurface - $20,000.00 |
| Elevator - 20 years | Elevator - $50,000.00 |
| Deferred Maintenance - Various | Deferred Maintenance - Various |
| Concrete Restoration - Various | Concrete Restoration - Various |
| Gates/fence Parts - Various | Gates/fence Parts - Various |

| 2. Estimated Remaining Useful Life | 4. Est. Reserve Balances as of 12/31/09 | |
|---|---|---|
| Air Conditioning 7 Units - 3 year | A/C 7 Units | 12,788.00 |
| Paint - 3 years | Paint | 57,700.00 |
| Roof (flat) 16 years | Roof (flat) | 100,000.00 |
| Roof (metal) - 16 years | Roof (metal) | 39,500.00 |
| Road Resurfacing - 1 years | Road | 46,700.00 |
| Pool Diamond Brite - 9 years | Pool | 500.00 |
| Deck - 1 year | Deck | 20,000.00 |
| Elevator - 10 years | Elevator | 17,450.00 |
| Concrete Restoration - Various | Concrete Restoration | 46,300.00 |
| Deferred Maintenance - Various | Deferred Maintenance | 7,800.00 |
| Gates/fence Parts - Various | Gates/fence Parts | 2,000.00 |
| TOTAL RESERVE FUNDS | | 350,738.00 |

## OCEAN CLUB JUPITER CONDOMINIUM ASSOCIATION, INC.
## PROPOSED BUDGET FOR 2010
### JANUARY 1, 2010 - DECEMBER 31, 2010

|  | 2009 APPROVED BUDGET | ACTUAL 9/30/2009 | PROJECTED 2009 | PROPOSED 2010 BUDGET |
|---|---|---|---|---|
| INSURANCE  (Not included in operating budget) |  |  |  |  |
| 5400 COMMERCIAL PROPERTY | 117,619.23 | 91,552.00 | 117,619.23 | 145,189.00 |
| 5407 GENERAL LIABILITY | 3,935.76 | 2,089.00 | 3,935.76 | 3,901.45 |
| 5401 FLOOD INSURANCE | 4,224.00 | 3,238.00 | 4,224.00 | 4,761.90 |
| 5402 EXCESS FLOOD | 10,647.14 | 8,044.00 | 10,647.14 | 11,866.39 |
| 5404 CRIME/UMBRELLA/D&O | 3,405.12 | 1,998.00 | 3,405.12 | 3,620.11 |
| 5406 BOILER & MACHINERY | 1,519.00 | 986.00 | 1,519.00 | 1,627.00 |
| 5405 FINANCE  INTEREST | 1,180.80 | 1,513.00 | 2,094.00 | 3,086.57 |
| 5407  APPRAISAL FEE 2010 | 0.0 | 0.0 | 0.0 | 600.00 |
| TOTAL INSURANCE EXPENSE  * | 142,511.05 | 109,400.00 | 143,444.25 | 174,652.42 |

MAINTENANCE FEES:
1. All units pay the same monthly charge.
2. Expenses are provided to all units.

|  | January | April | July | October |
|---|---|---|---|---|
|  | 1,690.00 | 1,690.00 | 1,690.00 | 1,690.00 |
| Operating Per Unit | 524.94 | 524.94 | 524.94 | 524.94 |
| Reserves Per Unit | 909.65 | 909.65 | 909.65 | 909.65 |
| Insurance Payment Per Unit  * | 3,124.59 | 3,124.59 | 3,124.59 | 3,124.59 |
| Total Assessment Per Quarter |  |  |  |  |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 9:10-cv-80792

LOUISE ROTONDO and
ERIC DUTTON,

      Plaintiffs,

v.

OCEAN CLUB JUPITER
CONDOMINIUM ASSOCIATION,
INC., a Florida Corporation

      Defendant.
_____/

# EXHIBIT 'B'



**U.S. Department of Labor**
Employment Standards Administration
Wage and Hour Division
Washington, D.C. 20210

FLSA2008-8

September 29, 2008

Dear Name*:

This is in response to your letter requesting an opinion regarding how certain types of revenue generated by your client affect your client's coverage under the Fair Labor Standards Act (FLSA). Although your client's total revenue is currently less than the $500,000 threshold for enterprise coverage under section 3(s)(1)(A) of the FLSA[1], you wish to know whether your client's services of providing veterinary care, shelter, and adoption services for homeless animals qualify as "eleemosynary" and whether certain categories of revenue and non-cash donations generated by your client should be included when making future determinations of enterprise coverage.

Your client is a private, non-profit, charitable organization providing shelter and medical care (including spaying and neutering) for homeless animals and placing animals in adoptive homes. The organization's charter states that gifts and donations made to the organization may be used only to further the charitable purposes of the organization. Your client's total revenue in one recent year was about $414,000. The sources of the revenue were as follows: (a) cash donations from individual and corporate contributors, (b) fees for pet adoptions and sales of spay/neuter certificates, (c) membership dues, and (d) dividends and interest from securities and investments.

Under sections 6 and 7 of the FLSA, the Act's minimum wage and overtime requirements apply to all nonexempt employees of covered "enterprises"—*enterprise coverage*—and to nonexempt employees individually engaged in interstate commerce—*individual coverage*. Your inquiry is limited to the issue of enterprise coverage. Pursuant to sections 3(r) and (s) of the FLSA, enterprise coverage applies to the following employers:

- Federal, state, or local government agencies;

- Hospitals (establishments primarily engaged in offering medical and surgical services to patients who generally remain in the establishment overnight, several days, or for extended periods);

---

[1] Unless otherwise noted, any statutes, regulations, opinion letters, or other interpretive material cited in this letter can be found at www.wagehour.dol.gov

- Residential care facilities primarily engaged in (i.e., 50% or more of income attributable to) the care of the sick, aged, mentally ill, or developmentally disabled who live on the premises;

- Preschools, elementary and secondary schools (as determined under state law), and colleges; as well as schools for mentally or physically handicapped or gifted children; and

- Enterprises with a business purpose with an annual dollar volume (ADV) of "sales made or business done" of $500,000 or more and at least two employees engaged in commerce or the production of goods for commerce.

 *Enterprise coverage*, as defined in section 3(s), applies only to activities performed for a business purpose. It typically does not extend to the eleemosynary, religious, educational, or similar activities of organizations operated on a nonprofit basis where such activities are not in substantial competition with other businesses. *See* 29 C.F.R. § 779.214; *see also* Wage and Hour Opinion Letters May 3, 1994; and December 16, 1968 (copies enclosed). Thus, as we stated in our December 16, 1968 letter:

> The eleemosynary activities of a charitable organization such as the Humane Society, if operated on a nonprofit basis, would generally be considered to be outside the act's enterprise coverage. In addition, any other activities in which such organization might engage would not provide a basis for enterprise coverage of the employees employed in them unless the annual gross volume of sales made or business done in such activities is $500,000 or more. . . .

Based on the information provided, it appears that most of your client's services qualify as eleemosynary; in any event, your client would not currently be covered on an enterprise basis, because its total revenue is below $500,000 from all income. Because your client anticipates that its total revenue may in the future exceed the statutory threshold, you ask for our determination as to whether various categories of revenue count toward the $500,000 threshold.

Although the FLSA and its implementing regulations are silent regarding whether the four categories of revenue you describe should be included as "sales made or business done" when calculating ADV for enterprise coverage purposes, it has long been our position that income derived from eleemosynary activity should not be included as sales made or business done. Income from contributions, membership fees, or dues (except any part which represents the value of a benefit, other than of token value, received by the payer), or donations (cash or non-cash) used in the furtherance of eleemosynary activities, does not come within the phrase "sales or business done" in section 3(s). Consequently, your client need not count such income in the calculation of its ADV under section 3(s).

Services provided for a fee to customers, such as for spaying/neutering or for pet adoption, are provided for a business purpose to the general public in competition with other businesses (pet stores, kennels, etc) and thus do not qualify as eleemosynary activities. Also, interest and dividends on investments are "sales made or business done" under section 3(s) which must be included in the ADV calculations. *See* Wage and Hour Opinion Letters January 29, 1999; November 4, 1983; October 16, 1974; December 31, 1969; and May 29, 1968.

Please bear in mind that employees of enterprises not covered under the FLSA may still be *individually covered* in any workweek in which they are engaged in interstate commerce, the production of goods for commerce, or activities closely related and directly essential to the production of goods for commerce. Examples of such interstate commerce activities include making/receiving interstate telephone calls, shipping materials to another state, and transporting persons or property to another state. Note, however, that the WHD has a longstanding enforcement position on individual coverage that is contained in the Field Operations Handbook: "As a practical matter, the Wage and Hour Division does not assert *individual coverage* over an employee who is ordinarily engaged in employment which is not covered but who may on isolated occasions spend an insubstantial amount of time performing [such] individually covered work." Field Operations Handbook § 11a01.

This opinion is based exclusively on the facts and circumstances described in your request and is given on the basis of your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented. Existence of any other factual or historical background not contained in your request might require a conclusion different from the one expressed herein. You have represented that this opinion is not sought by a party to pending private litigation concerning the issue addressed herein. You have also represented that this opinion is not sought in connection with an investigation or litigation between a client or firm and the Wage and Hour Division or the Department of Labor.

We trust that this letter is responsive to your inquiry.

Sincerely,


Alexander J. Passantino
Acting Administrator

Enclosures: Wage and Hour Opinion Letters January 29, 1999; May 3, 1994; November 4, 1983; October 16, 1974; December 31, 1969; December 16, 1968; May 29, 1968

**\* Note: The actual name(s) was removed to preserve privacy in accordance with 5 U.S.C. § 552(b)(7).**